CALOGERO, Justice.
The issue presented in this rather unusually postured case is whether Steven Gallagher, imprisoned in Orleans Parish Prison on a two year sentence for felony theft, is entitled to either work credits or good time credits, or both. The case is before us both on writs of habeas corpus by Gallagher and on rehearing application by Sheriff Foti. It arose as follows.
On December 16, 1982, Gallagher was convicted of felony theft, an offense which occurred on June 7, 1982. On March 25, 1988 he was sentenced to two years in Orleans Parish Prison, with credit for time served.
While in prison, Gallagher made a request for his “roll-out” (release) date. The release date given to him by prison authorities was in September of 1984. It did not reflect any credit for good time, or for work he had performed while imprisoned.
On September 29, 1983, Gallagher filed a petition in the Criminal District Court for the Parish of Orleans seeking a writ of habeas corpus. He claimed that he had not been given credit for two months previously served and also that he was being denied work time and good time credits on his sentence.
Gallagher’s trade is plumbing and during his stay at the Parish prison he worked as a plumber in the prison and in its satellite facilities. After a hard freeze in December, 1983, he repaired seventeen broken lines in the Conchetta building. In addition to the plumbing detail, Gallagher worked in the welding workshop in the prison. He also participated in the construction of the Emergency Detention Center and the Ren-don Street facility.
Gallagher contends that he was led to believe that he would receive a diminution of his sentence for the work he performed. He also claims an entitlement to a diminution of his sentence for “good time.”
Gallagher’s petition was denied, and he sought writs from the Court of Appeal on October 24, 1983. On November 16, 1983 the Court of Appeal denied writs. Gallagher applied for writs from this Court on November 21, 1983. On December 16, 1983 this Court granted his application and ordered the trial court to conduct an evi-dentiary hearing. State ex rel Gallagher v. Foti, 442 So.2d 474 (La.1983).
The evidentiary hearing was conducted on January 13 and January 20, 1984. Gallagher called several witnesses, including Sheriff Foti, in an attempt to prove his entitlement to work credits and good time. On February 10, 1984, the district court denied Gallagher’s petition for habeas corpus. The trial court found that the sheriff maintained a strict policy of not awarding good time or work time credits to any inmates in Orleans Parish Prison. Based on that finding, the court held that Sheriff Foti had absolute discretion concerning diminution of sentences for “good time” and work performed while in prison, and that Sheriff Foti had not abused his discretion in denying work credits or good time credits to Gallagher. Gallagher’s application for writs from the court of appeal was denied, without a review of the hearing transcript, on March 23, 1984. Judge Red-mann dissented from the denial and assigned reasons in favor of granting writs.
Gallagher again applied for writs in this Court, seeking review of the lower court *1224 decisions. On April 23, 1984, we remanded the case to the Court of Appeal with an order for the court to reconsider its decision after a review of the transcript of the district court proceedings. State ex rel Gallagher v. State, 449 So.2d 1029 (La.1984). Upon reconsideration, the Court of Appeal denied writs in the case on May 16, 1984.
On May 17,1984, Gallagher again sought review of the Court of Appeal denial. We granted the application on June 27, 1984, and issued the following order:
The district court is ordered to grant relator mandatory work credit for work performed under La.R.S. 15:571.10(A). The Sheriff is ordered to exercise discretion on an individual basis on the issue of whether relator should be granted a diminution of sentence under La.R.S. 15:571.-10(B). State ex rel Gallagher v. State, 452 So.2d 166 (La.1984).
Sheriff Foti thereafter applied for a rehearing. While the rehearing application was pending in this Court, the district court, apparently responding to the then non-final June 27, 1984 action, conducted an evidentiary hearing on July 10, 1984 to determine whether Sheriff Foti had complied with this Court’s June 27th order. The district court held that the Sheriff had complied with our order notwithstanding the Sheriff’s position that Gallagher was entitled to no work credits or good time credits. The court was of the view that Gallagher had not performed work which entitled him to work credits under Section A of La.R.S. 15:571.10. With regard to other work performed by Gallagher, the court held that the sheriff had absolute discretion in allowing diminution of sentence for good time under R.S. 15:571.10(B) and that the sheriff had not abused his discretion in denying it in this case.
On July 19,1984, Gallagher again applied to this Court for supervisory writs, claiming that the district court had not complied with the order issued by this Court on June 27, 1984. On July 27, 1984, we granted Gallagher’s application for writs (complaining of the district court ruling of July 10, 1984) as well as Sheriff Foti’s rehearing application (complaining of our order of June 27, 1984). State ex rel Gallagher v. State, 453 So.2d 946 (La.1984). Because the case could not be docketed and decided prior to its becoming moot upon Gallagher’s forthcoming release in September, 1984 (without any work credits or good time credits) and because, if entitled to work credits, Gallagher had already accrued enough to effect his immediate release, we coupled the writ grant on July 27, 1984 with an order for Gallagher’s interim release pending disposition of the case. Since Gallagher’s writ application and Foti’s rehearing application involve the identical issues, they were consolidated for our consideration and review.
The issue central to both cases is whether an inmate of Orleans Parish Prison, convicted of a felony but sentenced to the custody of the Orleans Parish Criminal Sheriff (rather than to the Department of Corrections), is entitled to either work credits for work he performs or good time credits for good behavior.
La.R.S. 15:571.10 is the basic statutory provision which authorizes the diminution of sentences of prisoners confined to parish prison for work credits and good time credits. La.R.S. 15:571.10, as amended in 1983, provides:
A. Any prisoner consenting to work under the provisions of R.S. 15:709 shall have as many days taken off or remitted from his sentence corresponding with the number of days during which he shall have performed work. The days shall be computed at the rate of ten hours work per day.
B. Notwithstanding any provision of law to the contrary, any inmate not committed to the Department of Corrections who consents to, and participates in, any or all or any combination of the following may, at the discretion of the sheriff of the parish in which the conviction was had, be granted a diminution of sentence for:
(1) Work performed within the parish prison.
*1225 (2) Work performed on public works programs outside the parish prison.
(3) Attendance of rehabilitation programs.
(4) Demonstrations of good behavior.
C. Such diminution of sentence shall take off or remit from the sentence as many days as the prisoner has earned by compliance with the provisions of Subsection B.
The questions presented for our consideration are twofold: (1) whether La.R.S. 15:571.10 entitles Orleans Parish Prison inmates to mandatory work credits and/or mandatory good time credits, and, if so, (2) whether Steven Gallagher performed work while an inmate of parish prison which qualifies under La.R.S. 15:571.10. Our resolution of the issues in this case rests on the proper interpretation of La.R.S. 15:571.-10, Sections A and B.
Stripped of its historical background, La. R.S. 15:571.10, as amended in 1983, makes no sense as written. Section A states that any prisoner consenting to work on parish public works[1] “shall” be given credit on his sentence at one day for every 10 hours. On the other hand, Section B provides that in addition to “demonstration of good behavior” and “attendance of rehabilitation programs” any prisoner consenting to work “within the parish prison ...” or “on public works programs outside the parish prison” “may” receive credit on his sentence (one day for one day) at the discretion of the sheriff. To confuse matters further, Section A still refers to prisoners consenting to work under the authority of La.R.S. 15:709, which was repealed in 1983. 1983 La.Acts No. 615. Nonetheless, through a historical analysis of the provision, the intent and state of the law can be discerned.
In 1888, the legislature passed Act 121 to authorize the sheriffs of the various parishes (Orleans included) to employ consenting prisoners “to perform manual labor upon any ... public works inside or outside of the prison ... as shall be determined by the police juries of the several parishes and the municipal authorities of the several towns and cities.”[2] That original statute, *1226 1888 La.Acts No. 121, first envisioned, for prisoners in the parish jails throughout the state including Orleans Parish, voluntary work (“whenever a prisoner ... shall be willing of his own free will and accord to perform manual labor_”) in return for mandatory credit of one day for every 10 hours.
In 1894, the legislature then began moving toward a system of compulsory work in all parishes except Orleans by providing that the police juries “may” use convicts for work through the entire length of their sentences and “may,” in return, reduce those sentences by one fourth. 1894 La. Acts No. 29.[3] By 1908, the system of compulsory labor had solidified: work became mandatory in all parishes except Orleans (“all able bodied inmates over the age of eighteen years and under the full age of fifty-five years shall be worked ... and shall be kept working_”); and in return, the prisoners would receive mandatory (“shall”) credits of one-sixth off their terms. 1908 La.Acts No. 204. Those provisions for mandatory labor (still excluding Orleans Parish) were then carried over *1227 in Acts 1942, No. 289 and into La.R.S. 15:571.1 and La.R.S. 15:709 (1950).[4]
La.R.S. 15:709 (originating in part in 1894 La.Acts No. 29) gave the governing bodies in each parish the authority to enact rules and regulations for convict labor under La.R.S. 15:571.1 (i.e., forced labor in all parishes except Orleans). Credit for that labor was computed at one-sixth the term of imprisonment, as it had been in 1908 and 1942. La.R.S. 15:571.9 (1950). However, the legislature never repealed the voluntary labor provisions of Acts 1888, No. 121 and that act reappeared in the Revised Statutes of 1950 as La.R.S. 15:708[5] (which contained Sections 1, 3 and 4 of 1888 La. Acts No. 121), with mandatory credits (again one day for ten hours) required by La.R.S. 15:571.10[6] (which contained Section 2 of 1888 La.Acts No. 121).
Louisiana, therefore, had a confusing and overlapping system of forced and voluntary labor, with different credits assigned toward early release[7] until the Legislature repealed La.R.S. 15:571.1 (authoriz *1228 ing forced labor) by Acts 1966, No. 310, effective January 1, 1967[8].
The mandatory character of work day credits, however, remained constant since 1888. In 1977, the Attorney General’s Office thus issued the following opinion under R.S. 15:571.10 (as amended in 1966):
... since section 571.10 states unequivocally that any prisoner who works ‘shall’ have as many days taken off as he works ... once work credit days are earned by law they may not be forfeited or taken away by the sheriff.
Op.Atty.Gen., 1976-77, p. 294. (emphasis in the original).
In the meantime, good behavior credit (“good time” unrelated to work) has had a more varied history. Through the 1950’s, the Legislature authorized good behavior (good time) credits in the parish prisons. La.R.S. 15:571.3 (1950)[9]; Acts 1942, No. 50; Acts 1926, No. 311. In 1964, however, the Legislature amended La.R.S. 15:571.3 and restricted good time (good behavior) credits in the parish jails to prisoners serving misdemeanor sentences of one year or more. 1964 La.Acts No. 426.[10] By contrast with mandatory work day credits, “good time” has always remained within the discretion of the sheriff. In the same 1977 opinion, the Attorney General’s office thus noted:
... since the awarding of good .time allowances rests in the discretion of the sheriff, he may revoke or forfeit good time he has previously allowed. Section 15:571.3 reads in part: 'The sheriff of the parish in which the conviction was had shall have the sole power to determine when good time has been earned on which diminution of sentence may be allowed.’ Under this same authority he may restore good time once taken away. Op.Atty.Gen., 1976-77, p. 293.
In 1966, or two years after it had denied good time/good behavior credits to prison *1229 ers serving felony (or 6 month misdemean- or) sentences in the parish jails, the legislature amended and reenacted La.R.S. 15:571.10. 1966 La.Acts No. 540.[11] The purpose of the act was to provide for the “[Application of work days to sentences of prisoners voluntarily performing manual labor on public work of parish ...” and for the “diminution of sentences of prisoners confined in Orleans Parish Prison.” Section A thus continued unabated the Legislature’s policy of providing mandatory (“shall”) work day credits for “[a]ny prisoner consenting to work” on parish public works. Section B (new) provided that “[Notwithstanding any other provisions to the contrary ...” [i.e., notwithstanding La. R.S. 15:571.3 amended 2 years earlier] the Criminal Sheriff for Orleans Parish could reduce (on a one for one basis) the sentence of any prisoner consenting “... to work either within the parish prison or on public works programs outside of the parish prison and/or to attend rehabilitation programs and/or demonstrating good behavior....”
It has been argued that the effect of the 1966 amendment was to make Orleans Parish prisoners worse off than they were before the amendment because it placed work day credits within the discretion of the criminal sheriff instead of having them mandatory under Section A. To the contrary however, the overall effect of Section B as amended was favorable to the Orleans Parish inmates. Assuming that Orleans Parish had a criminal sheriff willing to exercise his discretion, the 1966 amendment restored at least the possibility of good time or good behavior credits for prisoners serving felony (or 6 month misdemeanor) sentences, whether they worked or not under Section A.
This view is supported by the amendment made to La.R.S. 15:571.10 in 1983. Therein, the Legislature, concerned about overcrowding in the parish prisons, amended La.R.S. 15:571.10(B) (leaving Section A unchanged) and gave similar authority to that given the Orleans Parish Sheriff in 1966 to every other parish sheriff in the state. Carrying forward the distinction drawn in 1966, the 1983 amendment provides for “Application of work days to sentences of prisoners voluntarily performing manual labor on public works of parish ...” and for “diminution of sentences of prisoners confined in parish prison....” Any doubt that the 1983 amendment was designed to increase, not restrict, the possibilities of early release is eliminated by the following verbatim transcript of testimony at the hearing on Senate Bill 530 (Act No. 608) in the Senate Finance Committee on May 16, 1983:
Jean Bell, Sheriffs Association
JEAN BELL — Senate Bill 530 is an amendment to the provisions of the Code relative to good behavior. Actually we found a hiatus in the law and they had suggested that we get corrected regarding overcrowding in parish jails.
SENATOR CHABERT — What does it deal with?
JEAN BELL — It seems that we had one of the DA’s in the state that had gotten concerned and had issued a ruling saying that the sheriffs could not give good time and actually Corrections was giving more good time than the sheriffs were. There is another provision in the statute that did allow the sheriff to give good time. *1230 So they just wanted to get it corrected. It was endorsed by the DA and the sheriffs.
SENATOR KELLY — Can the sheriff give good time under this bill?
JEAN BELL — Yes, sir. You give one for one.
Bill reported favorable.
Thus the present structure of La.R.S. 15:571.10 (198B), when considered in light of the historical background of both work time credits and good time credits, helps explain the intent and meaning of the provision.
The opening sentence of La.R.S. 15:571.-10(A) places a limitation on the type of work which qualifies for mandatory work credits. The provision is limited to “... prisoners] consenting to work under La. R.S. 15:709 ...”
As set forth above, since 1950, La.R.S. 15:709 had given authority to the governing bodies of each parish to enact “regulations for the working, safekeeping, clothing, housing and sustenance of those persons serving their sentences while working under its supervision as provided in La.R.S. 15:571.1 [i.e., forced labor]_” La.R.S. 15:709 had nothing whatsoever to do with prisoners who consented to work. La.R.S. 15:571.1, authorizing forced labor, was repealed in 1967, ending the system of forced prisoner labor. At that time, the Legislature neglected to repeal La.R.S. 15:709, which implemented the forced labor provision. However, in 1983, the legislature did repeal La.R.S. 15:709, 1983 La.Acts No. 615, making clear that its previous repeal of La.R.S. 15:571.1 in 1967 had rendered prisoner labor voluntary instead of mandatory.
The sheriff argues that the repeal of La.R.S. 15:709 undermines La.R.S. 15:571.-10(A) and renders it meaningless. For the reasons which follow, we disagree.
The most compelling reason for finding the Sheriffs argument to be without merit is the simple fact that the Legislature never intended that La.R.S. 15:571.-10(A) refer to La.R.S. 15:709. Rather, it was always intended that the reference in La.R.S. 15:571.10(A) be to La.R.S. 15:708, a viable provision today. The reference in La.R.S. 15:571.10(A) to La.R.S. 15:709 instead of La.R.S. 15:708 was an inadvertent error made in 1950 when the Revised Statutes were compiled and enacted.
The revisers, assigned the task of compiling the numerous acts which had accumulated in Louisiana were not empowered to make substantive changes in the law. Rather, they were authorized to compile the many Acts into a logical organizational scheme, eliminating unconstitutional, duplicating and obsolete material. 1942 La.Acts No. 42. And, as the Reviser’s Notes indicate “[n]o substantive policy changes [were] made.”
In accordance with the organizational scheme adopted, as is pertinent to the case before us, the revisers took the four sections of 1888 La.Acts No. 121 (on voluntary labor with mandatory credits of one day per 10 hours work) and divided them into what was then proposed to be two separate statutes, La.R.S. 15:571.10 (containing Section 2 of 1888 La.Acts No. 121) and La.R.S. 15:709 (containing Sections 1, 3 and 4 of 1888 La.Acts No. 121).[12] The Reviser’s Notes expressly indicate that no change was intended to be made to the Act. Note, however, that at that time, the provision which became La.R.S. 15:708 was, in the Reviser's Notes, numbered one number higher, i.e., La.R.S. 15:709. See Louisiana Revised Statutes 1950, Reviser’s Notes, Title 14-15, February 1947. (No doubt this is why the reference in La.R.S. 15:571.10 was made to La.R.S. 15:709.)
*1231 However, before the final adoption of the revised statutes as proposed, some deletions were made of certain provisions. When a deletion was made, other remaining provisions were moved up a number. This is evident when you compare proposed sections with those ultimately enacted.
Originally, as provided in the Reviser’s Notes, there was a provision numbered La. R.S. 15:708 which was entitled “Employment of vagrants on public works.” The reviser’s notes which follow that provision state “[t]his statute has been included in the Revised Statutes but the Reporter recommends its deletion since it may be considered obsolete and special.” On the Reporter’s recommendation, the then proposed Section 708 (Section 3890 of the Revised Statutes of 1870) was deleted and not thereafter enacted as part of the Revised Statutes of 1950.
Accordingly, when the other provisions were moved up, because of the deletion of proposed Section 708, former Section 709 (concerning voluntary labor) became and was enacted as 708 and former Section 710 (concerning regulations for the working and housing of prisoners forced to work) became and was enacted as Section 709, etc. Unfortunately, the cross reference change in La.R.S. 15:571.10 was not coinci-dently made, so that La.R.S. 15:571.10 was enacted inadvertently referring to La.R.S. 15:709 when all along, as indicated by the Reviser’s Notes, no change in the law was intended, and the reference was intended to be to the statute which became La.R.S. 15:708.
No other explanation makes sense, since La.R.S. 15:571.10 applies to “any prisoner consenting to work” and La.R.S. 15:709 (repealed in 1983) had to do only with regulations for the housing and discipline of prisoners forced to work, and had nothing to do with prisoners consenting to work. It is and always has been La.R.S. 15:708 (the statute first proposed to be designated 709 in the Revision) which authorizes the use of prisoners, who consent to do so, to work on parish public works.
Furthermore, in the same act (1983 La. Acts No. 615) in which the Legislature repealed La.R.S. 15:709, the Legislature also amended and reenacted La.R.S. 15:708, governing voluntary labor, under the direction of the parish authorities.[13] It is apparent from reading La.R.S. 15:709, be *1232 fore its repeal, and its companion provision, La.R.S. 15:708, that the Legislature’s reference in La.R.S. 15:571.10(A) to La.R.S. 15:709 was inadvertent and only meant to specify, under La.R.S. 15:708, that work performed for the parish on public works was the character of work which would trigger the mandatory work credits.
The legislature was free to repeal Section A when it amended Section B in 1983 and it chose not to do so. The fact that the Legislature did not repeal Section A (providing for mandatory work credits for volunteer work) when they repealed La.R.S. 15:709 leads us to conclude that it did not intend to change a policy dating back to 1888 of giving mandatory work credits for voluntary labor.
The Legislature’s use of the word “shall,” in La.R.S. 15:571.10(A), indicates an intent on their part for sentence credits to be mandatory under that section. Despite the Legislature’s inadvertent use of or reference to La.R.S. 15:709, in La.R.S. 15:571.10(A), instead of La.R.S. 15:708, as was intended (or perhaps we should say its inadvertent failure to correct a numerical error that was made 35 years ago when the provision was enacted in 1950), it is quite apparent that the Legislature intended to continue the basic policy established in the years 1888 and 1908 by maintaining a viable voluntary labor system under La.R.S. 15:571.10(A) with mandatory work credits. Therefore, parish prison inmates are entitled to credit for any work which falls within the ambit of Section A.
The governing authorities of the parishes may still use convict labor from the parish jails on designated parish projects, albeit now with the sheriff’s approval and on a wholly voluntary basis. In return, the prisoners consenting to such work “shall” receive credit on their sentences.
Moreover, every sheriff in the state may now, just as the Criminal Sheriff for Orleans Parish could, under the 1966 legislation, give additional credits toward early release, whether for good behavior, attendance of rehabilitation programs, or work. The sheriff may, for example, accelerate the work day credits on parish projects from one day for ten hours of work under La.R.S. 15:571.10(A) to one day for one day under La.R.S. 15:571.10(B), or give credits for work inside or outside the parish walls, and not specifically for the governing parish authorities. This reading of La.R.S. 15:571.10 is entirely consistent with the legislative history of the statute and Senate Bill 530 of 1983. In this manner we resolve the apparent conflict between Sections A and B of La.R.S. 15:571.10 consistent with the intent of the Legislature in the enactments and amendments to these confusing statutes.[14]
Accordingly, under the interpretation of La.R.S. 15:571.10 which we render today, the Criminal Sheriff for the Parish of Orleans never had the discretion under either the 1966 or 1983 legislation to deny any prisoner, including Gallagher, credit for work performed on parish public works, that is, projects which benefit the parish directly. Such work must be distinguished, however, from the duties performed in the everyday upkeep of the prison. As to the latter, the sheriff has the right and duty to see that prisoners assist him in the every day maintenance of the prison. Although the sheriff has the authority to grant credit for this kind of work under La.R.S. 15:571.-10(B), he is not obliged to do so. Whether or not a prisoner is entitled to “good time” credits under Section B is, as it has always *1233 been, a matter entirely within the discretion of the Sheriff. The Sheriff does not abuse his discretion when he refuses to give good time credits to all inmates.
In order to qualify for the mandatory work credits under La.R.S. 15:571.-10(A), Gallagher is required to show he performed work on parish public works (of Orleans Parish). Gallagher worked on the construction of the Emergency Detention Center (commonly referred to as “tent” city). That project was undertaken in response to a severe problem of overcrowding in the Orleans Parish Prison. Gallagher ran pipes which were used as conduits for electrical lines. This work falls within the scope of La.R.S. 15:571.10(A). Notwithstanding the fact that the sheriff performed the immediate supervision of the project, it cannot be disputed that the Emergency Detention Center project was a public works project undertaken for the benefit of the community as a whole. It is clearly not the type of maintenance and upkeep work which is excluded from La. R.S. 15:571.10(A).
Gallagher’s participation in the construction of the Rendon Street facility likewise falls under La.R.S. 15:571.10(A). The Ren-don Street facility is a satellite prison facility. The construction of that facility, like the construction of the Emergency Detention Center, must be considered a public works project. Gallagher is entitled to credit of one day for every ten hours worked on the Emergency Detention Center and the Rendon Street facility.
Gallagher’s work on the plumbing detail and in the Conchetta building present a closer question. He repaired broken pipes in the Conchetta building after a freeze in December, 1983. This work, unlike the work on the Emergency Detention Center and Rendon Street, was not new construction. It was performed within the confines of an existing prison facility. The sheriff maintained immediate supervision and there was no immediate benefit to the community as a whole. This plumbing work cannot be construed as a public works project and therefore it does not qualify for mandatory credit under La.R.S. 15:571.10(A).
Notwithstanding that Gallagher’s work on the Conchetta building and the plumbing detail do not qualify under the mandatory work credit provisions of La.R.S. 15:571.10(A), it appears from the record that he nonetheless has earned sufficient work credits to have entitled him to his release on July 27, 1984, when we ordered it.[15] Accordingly, Gallagher was properly ordered released by this Court on July 27, 1984, and to that extent the Sheriff’s rehearing application is denied.
However, our order of June 27, 1984 was twofold. We ordered the district court “to grant relator mandatory work credit for work performed under La.R.S. 15:571.-10(A).” For the reasons set out above, we reaffirm that action today. We also stated that “[t]he Sheriff is ordered to exercise discretion on an individual basis on the issue of whether relator should be granted a diminution of sentence under La.R.S. 15:571.10(B).” For the reasons set out above, we now find that the awarding of good time credits under La.R.S. 15:571.-10(B) is solely within the discretion of the parish sheriff to exercise, or not, as he sees fit. Accordingly, this latter part of our June 27, 1984 action is vacated.
*1234 Thus, in summary, we conclude as follows. Work performed on parish public works nets a parish inmate mandatory work credits at the rate of one day for each ten hours worked. The record evidences over 47 days of work credits due Gallagher and, accordingly, he was properly ordered releásed by this Court. Our order concerning the exercise of the sheriffs discretion regarding good time credits was erroneous and is hereby vacated. Should the sheriff institute a good time credit program under La.R.S. 15:571.10(B), he must exercise his discretion in a fair, even-handed and reasonable fashion. However, it is entirely within his discretion to institute such a program or not. Accordingly, we hold that the Sheriff does not abuse his discretion afforded him under La.R.S. 15:571.10(B) by his uniform system of denying good time credits to all inmates.[16]
Decree
For the foregoing reasons, the district court judgment is reversed and the June 27, 1984 Per Curiam order of this Court is affirmed in part and reversed in part.
DISTRICT COURT JUDGMENT REVERSED; JUDGMENT OF THIS COURT AFFIRMED IN PART AND REVERSED IN PART.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
DIXON, C.J., concurs in part and dissents in part, with reasons.
MARCUS, J., dissents and assigns reasons.
WATSON., J., dissents being of the opinion that the discretion is solely with the sheriff and not this court for the reasons stated by MARCUS, J.
LEMMON, Justice,
subscribing and assigning additional reasons.
I interpret La.R.S. 15:571.10B to authorize the sheriff, in his discretion, to institute programs permitting inmates to obtain diminution’ of sentence for (1) work performed within the parish prison, (2) work performed on public works programs outside the prison, (3) attendance at rehabilitation programs and (4) demonstrations of good behavior. The Legislature, in my opinion, did not intend to require the sheriff to institute such programs, but rather set forth basic guidelines for a sheriff who decided in his discretion to provide incentives such as rehabilitation programs for his prisoners. Whether such incentive programs and the attendant administrative problems are really worthwhile and effective may depend on many variables, such as the size of the prison and the availability of personnel to supervise and keep records of such activities.
Thus, while the sheriff in his discretion may decide to institute incentive programs such as “good time” credits, he may also decide not to do so.[1] However, if the sheriff institutes such a program, diminution of sentence must be administered in a rational, fair and evenhanded manner to those inmates who participate.

. Section A actually refers to work performed under La.R.S. 15:709. However, for the reasons set out hereinafter, we find that the Legislature intended that it refer, under La.R.S. 15:708, to parish public works.

. 1888 La. Acts No. 121 provided:
(author’s note)
To authorize the criminal sheriffs of the different parishes of the State, the parish of Orleans included, to employ in the performance of manual labor upon the public roads or levees, or streets or public buildings and improvements, any prisoner sentenced to the parish prison for any crime or offense, provided the consent of the prisoner be first obtained.
Section 1. Be it enacted by the General Assembly of the State of Louisiana, That hereafter whenever a prisoner sentenced to the parish prison of any parish of this State, the parish of Orleans included, by any court of competent jurisdiction, shall be willing of his own free will and accord to perform manual labor upon any of the public roads, or levees, or streets, or public buildings and improvements or public f-works inside or outside of the prison, the criminal sheriff of said parish shall set said prisoners to work upon such labor as shall be determined by the police juries of the several parishes and the municipal authorities of the several towns and cities; provided, that such prisoners shall always remain under the custody and control of the several sheriffs. La. R.S. 15:708 (1950) (1983)
Sec. 2. Any prisoner who shall thus consent to work shall have as many days taken off or remitted from his sentence corresponding with the number of days during which he L shall have performed work in the manner above mentioned; provided, that such days be computed at the rate of ten hours work per day. La. R.S. 15:571.10 (1950) La. R.S. 15:571.10A (1983)
*1226 Sec. 3. That the council of the city of New Orleans and the police juries of the several parishes are hereby authorized to pass all such ordinances which they may deem necessary to carry into effect the provisions of this act, and for the discipline, working and employment of such prisoners. (author's note) La. R.S. 15:708 (1950) (1983)
Sec. 4. This law shall not apply to criminals sentenced to hard labor. } La. R.S. 15:708 (1950) (1983)
Sec. 5. That all laws and parts of laws in conflict herewith are repealed.

. 1894 La. Acts No. 29 provided in pertinent part:
(author’s note)
Section 1. Be it enacted by the General Assembly of the State of Louisiana, That when any person shall be convicted and sentenced by any competent court of the State, (the Parish of Orleans excepted) to imprisonment in the Parish Jail, or to such imprisonment and the payment of a fine, or to such imprisonment in default of the payment of a fine, he shall be committed to such jail there to remain in close , confinement for the full term specified in the sentence of the court, provided: that the Police Jury of any Parish may, in its “ discretion work such convicts upon any roads, levees, public farm, or any other public work, within such parish, or may hire or lease the services of such convicts to any person, for the purpose of working them within the Parish, such convicts to be kept at work until the expiration of the sentence of imprisonment; provided, that convicts sentenced to imprisonment shall remain in jail and not be worked, if the judge passing the sentence shall so order. La. R.S. 15:571.1 (1950)
Sec. 5. Be it enacted, etc., Any convict working under the direction of the Police Jury who renders efficient services, and complies with all necessary rules and regulations, may have deducted from his term of imprisonment, one-fourth thereof. La. R.S. 15:571.9 (1950) (1983)
Sec. 6. Be it enacted, etc., The Police Jury may establish regulations for the working, guarding, safe-keeping, clothing, housing, and sustenance of convicts, while working under its k supervision and for their discipline when idle or refractory; and may enforce such regulations by reasonable penalties. La. R.S. 15:709 (1950) (1982)

. La.R.S. 15:571.1 as enacted in 1950 provided:
When any person i,s convicted and sentenced by any competent court of this state, parish of Orleans excepted, to imprisonment in the parish jail or to imprisonment and the payment of a fine or to imprisonment in default of the payment of a fine he shall be committed to the parish jail and kept in close confinement for the full term specified by the court. All able-bodied males, over the age of eighteen years and under the age of fifty-five years, shall be worked upon the public roads, parish farms or any other public works of the parish and shall be kept at work until expiration of the sentence of imprisonment. Where, in the discretion of the court, the person sentenced to imprisonment should be kept in close confinement, the court may so order.
La.R.S. 15:709, as enacted in 1950 provided:
The governing authority of each parish may establish regulations for the working, safekeeping, clothing, housing and sustenance of those persons serving their sentences while working under its supervision as provided in R.S. 15:571.1 and for their discipline while idle and refractory, and may enforce reasonable penalties for infractions of their regulations.
While any convicted persons are worked under the supervision of the governing authority, they may be kept overnight, and at such times as they are not at work, in the parish jail or other place for safekeeping, as the governing authority shall direct. The governing authority may employ guards to watch and direct the labor of all persons working under its supervision.

. La.R.S. 15:708, as enacted in 1950 provided:
Whenever a prisoner sentenced to the parish prison of any parish of the state, by and court of competent jurisdiction, shall be willing of his own free will to perform manual labor upon any of the public roads, levees, streets, or public buildings, works, or improvements inside or outside of the prison, the criminal sheriff shall set the prisoner to work upon labor determined by the governing authorities of the parishes and the municipal authorities of the towns and cities. The prisoners shall always remain under the custody and control of the sheriffs.
The governing authorities of the parishes shall pass all ordinances which they may deem necessary to carry into effect the provisions of this Section and for the discipline, working and employment of the prisoners.
This section shall not apply to criminals sentenced to hard labor.

. La.R.S. 15:571.10, as enacted in 1950 provided:
Any prisoner consenting to work under the provisions of R.S. 15:709 shall have as many days taken off or remitted from his sentence corresponding with the number of days during which he shall have performed work. The days shall be computed at the rate of ten hours work per day.

. The Attorney General’s office has tried twice to make sense of these work provisions. In 1942 (before Acts 1942, No. 289 superceded the earlier provision) it suggested simply that "[tjhere is no conflict in the provisions of Act 121 of 1888 and Act 204 of 1908, for the reason that the Act first mentioned has relation to voluntary manual labor by jail prisoners and Act 204 of 1908 contains provisions authorizing police juries to work or hire out jail prisoners without their consent and, therefore, the credit given a prisoner who performs work would depend upon the particular statute under which the work was performed.” Op., Atty Gen. 1940-42, p. 2915. In 1950 the Attorney General issued another opinion to the following effect: that all able bodied males 18 to 55 (except in Orleans Parish) were required to work (during the entirety of their confinement) by La.R.S. 15:571.1 and would receive as credit one-sixth the respective terms of imprisonment they were serving (La.R.S. 15:571.9); other prisoners not able bodied, under 18 or over 55, and female prisoners, who volunteered for work would receive credit at one day for every 10 hours (i.e., La.R.S. 15:571.10; 709). Op., Atty Gen. 1950-52, pp. 187-188.

. The legislature did not at that time, however, repeal La.R.S. 15:571.9, assigning credits for forced labor at ⅛ the term, nor did they repeal La.R.S. 15:709, empowering the governing authority to make appropriate rules and regulations regarding prisoners forced to work. In fact, the legislature recently amended La.R.S. 15:571.9 to make minor changes in its wording. Of course, the ¼ ratio still used in the statute makes no sense now that parish prisoners can no longer be required to work the full term of their sentences. Vestiges of the former forced labor system still appear elsewhere in the law. La.C.Cr.P. art. 890 thus provides that ‘‘[a]ny ... sentence of imprisonment [other than to the state penitentiary] subjects the defendant to confinement, and to labor unless otherwise specified." However, with the repeal of La.R.S. 15:571.1 in 1967, forced labor for parish prisoners is no longer authorized.

. La.R.S. 15:571.3, as enacted in 1950 provided:
A. Single good time.
Every Prisoner in the state penitentiary or parish prisons convicted of a felony or misdemeanor and sentenced to imprisonment for one year or more may earn a diminution of sentence, to be known as single good time, by good behavior as follows: two months for the first year; two months for the second year; three months each for the third and fourth years; and four months for each subsequent year.
The sheriff of the parish in which the conviction was had or the superintendent of the state penitentiary as the case may be, shall have the sole power to determine when single good time has been earned on which diminution of sentence may be allowed.
B. Double good time.
The superintendent of the state penitentiary may establish a special class of prisoners who have not been previously convicted and sentenced for a felony in any court in Louisiana, or in federal courts or courts of other states or countries and who have performed particularly meritorious service or maintained highly exemplary conduct. The prisoners in this class may be granted diminution of sentence of double the time specified in subdivision A of this Section to be known as "double good time.” Such additional diminution of sentence shall be allowed only with the written approval of the governor in each case.

.La.R.S. 15:571.3, as amended in 1964 provided:
A. Every prisoner in parish prison convicted of a misdemeanor and sentenced to imprisonment for one year or more may earn a diminution of sentence, to be known as "good time,” by good behavior, as follows: two months for the first year; two months for the second year; three months each for the third and fourth years; and four months for each subsequent year.
The sheriff of the parish in which the conviction was had shall have the sole authority to determine when good time has been earned for purposes of diminution of sentence.

. La.R.S. 15:571.10, as amended in 1966 provided:
A. Any prisoner consenting to work under the provisions of R.S. 15:709 shall have as many days taken off or remitted from his sentence corresponding with the number of days during which he shall have performed work. The days shall be computed at the rate of ten hours work per day.
B. Notwithstanding any other provisions to the contrary, for work performed and/or attendance in rehabilitation programs and/or good behavior, any prisoner in the Orleans Parish Prison consenting to work either within the parish prison or on public works programs outside of the parish prison and/or to attend rehabilitation programs and/or demonstrating good behavior may at the discretion of the Criminal Sheriff in Orleans Parish be granted a diminution of sentence which shall take off or remit from said sentence as many days as the said prisoner shall have worked and/or attended rehabilitation programs and/or demonstrated good behavior.

. Section 1 of 1888 La.Acts No. 121 authorized the use of prisoners who consented, to work on parish public works. Section 2 of the Act provided "any prisoner who shall thus [as above in Section 1] consent to work....When the Act was split into two separate statutes by the reviser’s organizational scheme, the wording of Section 2 of the Act, which became La.R.S. 15:571.-10 was changed slightly to read: "[a]ny prisoner consenting to work under the provisions of R.S. 15:709 ...,” (instead of “thus consenting to work,” i.e., as above in Section 1 of the Act).

. The amendment made three significant changes in the prior law governing voluntary labor. It placed responsibility for rules and regulations concerning prisoners at work on the parish projects in the sheriff’s office, rather than in that of the governing parish authorities. The amendment also gave the sheriff’s office some control over the use of his inmates. Former versions of R.S. 15:708 (reaching back to the original 1888 Act on voluntary labor) had provided that the criminal sheriff "shall set the [consenting] prisoner to work upon labor determined by the governing authorities of the parishes....” See, e.g., La.R.S. 15:708 (1950) (1966). La.R.S. 15:708 now provides that the criminal sheriff “may set the [consenting] prisoner to work upon labor determined by the governing authorities of the parish_” Finally, and for the first time, it included those prisoners sentenced to hard labor and awaiting transfer to the penitentiary, with the exception of certain serious offenses (e.g., murder, rape, etc.).
La.R.S. 15:708, as amended in 1983 provides:
A.Whenever a prisoner sentenced to a parish prison of any parish of the state, by any court of competent jurisdiction, or a prisoner in a parish prison awaiting transfer to a state correctional facility shall be willing of his own free will to perform manual labor upon any of the public roads, levees, streets, or public buildings, works, or improvements inside or outside of the prison or whenever a prisoner sentenced to the parish prison of any parish of this state, by any court of competent jurisdiction, or a prisoner in a parish prison awaiting transfer to a state correctional facility shall be willing of his own free will to perform manual labor upon any cemetery or graveyard, the criminal sheriff may set the prisoner to work upon labor determined by the governing authorities of the parishes and the municipal authorities of the towns and cities. The prisoners shall always remain under the custody and control of the sheriffs.
B. The sheriffs of the parishes shall establish regulations which they may deem necessary to carry into effect the provisions of this Section and for the discipline, working, and employment of the prisoners.
C. This Section shall not apply to criminals convicted of a capital offense or those sentenced to life imprisonment at hard labor as provided in R.S. 14:30, 30.1, 34, 41, 42 and 42.1 and R.S. 40:966(B).

. Additionally, the above interpretation, when applied to the 1966 amendment (which gave only the Orleans Parish Sheriff the right, in his discretion, to give sentence credits under Section B), saves that legislation from constitutional attack on equal protection grounds. If that amendment is viewed as limiting only Orleans parish inmates' right, to work credits, where all other parish inmates have a right to mandatory work credits, it might not pass constitutional muster. However, viewed as giving the Orleans Parish Sheriff the additional authority in his discretion to bestow good time credits to solve an overcrowding problem in Orleans Parish, notwithstanding that other parish sheriffs cannot give such credits, is more likely to be viewed as rationally related to a legitimate state interest.

. The prison work record, as it appears in the record in this case, is, at best, in poor condition. It shows mostly only successive check outs without corresponding check ins, the latter being just as necessary for establishing the hours Gallagher worked. Counsel for Gallagher states that he has examined the record and has found over 470 hours of work by Gallagher, which at the prescribed rate of one day per ten hours, entitled him to released on July 27, 1984 as ordered. The Sheriff has not disputed the fact that the record evidences over 470 hours of work by Gallagher. Rather, the sheriff argued that in order for the credit to be earned, the ten hour periods had to be worked at one time. We find this argument by the sheriff to be without merit and, therefore, find that the record supports the finding that Gallagher has worked over 470 hours for which he is due work credits, resulting in a diminution of sentence by over 47 days.

. Justice Watson’s dissent, in which he says "the discretion is solely with the sheriff and not this Court,” implies that in this opinion the majority has usurped the authority of the sheriff, or chosen to exercise discretion which is not within its power. In a similar vein Justice Marcus’ dissent can be read to imply that the Court has held that the sheriff has abused his discretion afforded him under the law. In fact, neither is correct. With regard to La.R.S. 15:571.-10(B) we have expressly held that “the awarding of good time credits under La.R.S. 15:571.10(B) is solely within the discretion of the parish sheriff to exercise, or not, as he sees fit.” We thus denied Gallagher the relief he seeks under that statute. Relative to La.R.S. 15:571.10(A) we have made a purely statutory interpretation that "any prisoner consenting to work on parish public works” must be given the credits on his sentence prescribed by law, a determination wholly unrelated to the exercise of discretion by the Sheriff or anyone else.

. An inmate is not constitutionally entitled to earn “good time” credits. See McCormick v. Hunt, 328 So.2d 140 (La.1976). The Legislature’s decision to leave such programs to the individual sheriff was a proper exercise of its authority.