**Anthony DIXON, Petitioner,**

v.

**James A. CHRANS, et al., Respondents.**

No. 95–3553.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1996.

Decided Dec. 9, 1996.

Richard B. Kapnick, Stephanie Stapleton (argued), Sidley & Austin, Chicago, IL, for Petitioner.

Brian F. Barov (argued), Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondents.

Before RIPPLE, DIANE P. WOOD and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Over 9 years ago, on September 23, 1987, Robert Taylor, a unit manager at Illinois' Pontiac Correctional Center, was stabbed to death on a cell block at the prison. The murder was said to be planned by members of a gang, the Gangster Disciples. For his alleged role in planning the attack, Anthony Dixon was issued a disciplinary ticket, charging violations of prison rules involving assault, gang activity, murder, and conspiracy to commit murder, along with other state law violations. After a disciplinary hearing he was found guilty and placed in segregation for 360 days and demoted to a lower prison "grade" for 360 days. He also lost 360 days of good-time credit.

Even though the penalty seems rather mild considering the magnitude of the offense charged, Dixon was unhappy. In 1988 he filed a lawsuit in state court, seeking restoration of good-time credits. The circuit court dismissed his complaint. He appealed, and while his appeal was pending, the Illinois appellate court decided the cases of other inmates growing out of the same incident. The court determined that the disciplinary proceedings in those cases did not comport with due process.

Because of these decisions, Illinois correctional officials gave Dixon a second hearing based on a redrafted disciplinary ticket. The new hearing was held in 1991 at the Stateville Correctional Center, the prison to which Dixon had been transferred. The result of the 1991 hearing was the same as the result of the previous one held at Pontiac.

Dixon again filed an action in state court, which the trial court dismissed. However, again the Illinois appellate court questioned whether due process was complied with in the Stateville hearing, so the case was remanded to the trial court. At oral argument on this appeal we were told that the state court case had, in turn, been sent back to Stateville for further fact-finding.

On February 7, 1991, Dixon filed this § 1983 suit in federal court. It was dismissed by the district court as time-barred. We reversed that decision, finding that the statute of limitations was tolled. *Dixon v. Chrans*, 986 F.2d 201 (7th Cir.1993). On May 11, 1993, Dixon amended his complaint to allege that both the Pontiac and Stateville disciplinary hearings violated due process.

Dixon moved for summary judgment; the State moved for judgment on the pleadings; and the district court, after reviewing *in camera* the Pontiac internal investigative report of the murder, *sua sponte* granted summary judgment for the defendants, based on a finding that the 1991 hearing complied with due process. The appeal currently before us was then filed.

There is some dispute about the scope of this appeal. The defendants say that Dixon attacks only the Stateville hearing. Dixon explains that Stateville is the only hearing he discusses on appeal because, in his view, the district court implicitly recognized the defects in the Pontiac hearing; why would he discuss on appeal a claim on which he prevailed? He has not, he says, abandoned claims based on what happened in the 1987 Pontiac hearing. Because of the nature of our decision, we need not decide this issue nor do we need to delineate the precise nature of Dixon's complaints. The deficiency we see in Dixon's case precludes us from evaluating either hearing.

The controlling issue in this case is whether *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), bars litigation of Dixon's claims at this time. We find that it does.

The by-now increasingly familiar decision in *Heck* is another step in the clarification of the relationship between two federal statutes of significance to state prisoners: 28 U.S.C. § 2254, the habeas corpus statute, and 42 U.S.C. § 1983, which deals with civil rights actions based on claims of constitutional violations. The Supreme Court has, of course, previously considered the overlap between the two laws in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), where it held that habeas corpus was the exclusive remedy for a state prisoner challenging the fact of his confinement or its duration. *Heck* presented a different problem: the § 1983 claim in that case did not involve a request for speedier release but rather for monetary damages for an allegedly unconstitutional conviction and imprisonment. The Court nevertheless held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question

by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

At § 2372. We have applied the *Heck* requirement to those § 1983 actions that do not involve attacks on convictions but that would necessarily call into question decisions of prison adjustment committees regarding the loss of good time credits. *Miller v. Indiana Dep't of Corrections,* 75 F.3d 330 (7th Cir. 1996). We have also determined that the *Heck* requirement is an essential element of a § 1983 claim; indeed, the claim does not arise until the requirement is met. *Rooding v. Peters,* 92 F.3d 578 (7th Cir.1996).

In a yet more recent case, we considered a situation fairly close to the one before us today. In *Clayton–El v. Fisher,* 96 F.3d 236 (7th Cir.1996), we considered a claim which was primarily a due process challenge to disciplinary hearings: the first at Pontiac and a rehearing at Stateville. However, despite that similarity, *Clayton–El* involved an additional element not present in our case. That was that defendant Fisher, a guard at Pontiac, allegedly did not deliver notice of a disciplinary hearing to *Clayton–El.* The issue was not the adequacy of the notice, but rather whether *Clayton–El* actually received the notice. This latter problem we termed, presumably for simplicity, a "category 1" claim, while the traditional due process claims were called "category 2" claims. We determined that the category 1 claim involved issues cognizable in a § 1983 case; it did not implicate issues reserved for habeas corpus and it should have been allowed to proceed:

> The first category includes the injuries for which Fisher's alleged conduct is the sole and immediate cause: the injury arising from the simple occurrence of a constitutional violation and *Clayton–El's* mental and emotional pain and suffering from the deprivation of his constitutional rights to due process. If these injuries occurred, they would have been complete as soon as *Clayton–El* discovered that he had been deprived of notice. Their existence would not depend upon anything that happened at a disciplinary hearing.

All other claims in *Clayton–El*—the category 2 claims—we found should be dismissed.

They were not yet cognizable because *Clayton–El* had not obtained a ruling from a state entity (or a federal court in a habeas case after exhaustion of state remedies) setting aside the disciplinary action taken against him.

Dixon's case, using the *Clayton–El* classification terminology, is solely a category 2 case. Like *Clayton–El*, he does not yet have a claim because he has not yet received a ruling setting aside the loss of his good time credits. Until he does, a federal court cannot properly adjudicate his § 1983 claim because to do so would call into question the loss of good time and would necessarily implicate the length of his sentence, despite the fact that in his § 1983 case he seeks damages only. To decide that he is entitled to damages would be to determine that his due process rights were violated in the manner in which the disciplinary proceedings were conducted, and that determination, in turn, would call into question the results of the hearing. Such a decision could have preclusive effect in the state court.

We also note that the contrary is true—which is something we think Dixon should consider. If a federal court were to decide—as the district judge did in this case-that his due process rights were *not* violated, that decision could also have preclusive effect in state court, possibly preventing Dixon from obtaining the one type of relief which is probably most important to him, or at least to most similarly situated prisoners—restoration of good time credits. This possibility should be vividly apparent to Dixon because he is on something of a roll in state court. To date, the Illinois appellate court has been far more receptive to his claims than has the only federal court to consider them.

Nevertheless, Dixon apparently prefers to go for broke and asks us for an out-and-out reversal of the district court order. He requests that judgment be entered in his favor. He contends that because we decided in *Rooding* that *Heck* set out an element of the claim, rather than a jurisdictional prerequisite to suit, and because defendants did not argue *Heck* in the district court, the issue is waived. We are asked to enter judgment for him even though under *Heck* he does not yet have a claim. Given the fact that *Heck* grows out of well-established law, going back at least to *Preiser v. Rodriguez*, we decline to close our eyes to reality.

We will follow the procedure set out in *Bell v. Peters*, 33 F.3d 18 (7th Cir.1994), and vacate the decision of the district court and remand this case with instructions to the district court to determine whether there is any relevant state court action regarding Dixon's challenge to the loss of good time. If so, the court should take appropriate action, depending on what the Illinois courts have decided. If there is no relevant state court action, the action should be dismissed until such time as a claim arises.

VACATED and REMANDED.