**James D. LUEDTKE, Plaintiff,**

**v.**

**Donald GUDMANSON, Defendant.**

**Civil Action No. 96–C–0590.**

United States District Court,
E.D. Wisconsin.

July 22, 1997.

---

James D. Luedtke, Oshkosh Correctional Institution, Oshkosh, WI, pro se.

Charles D. Hoornstra, Asst. Atty. Gen., Madison, WI, for Defendant.

## MEMORANDUM AND ORDER

REYNOLDS, District Judge.

The plaintiff, a prisoner at the Oshkosh Correctional Institution ("OCSCI") who is proceeding *pro se* filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's petition to proceed in forma pauperis.

Pursuant to 28 U.S.C. § 1915(b)(1), enacted on April 26, 1996, the plaintiff is required to pay the statutory filing fee of $150.00 for this action. If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed in forma pauperis. To proceed with an action in forma pauperis, the prisoner must complete a petition and affidavit to proceed in forma pauperis and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint. Thereafter, partial filing fee payments must be collected until the plaintiff has paid the full filing fee of $150.00.

This provision is mean-spirited and unnecessary. In forma pauperis is fundamental to our nation's beliefs that justice is blind; that money is no prerequisite to access to the courts; that a litigant's claim—not his social status—determines how his cause will fare in the courts. To require prisoners to pay some sort of filing fee while non-prisoner indigents pay nothing undermines these vital principles. This departure from traditional docket controls is made more draconian by the "three strikes" aspect of 28 U.S.C. § 1915(g) under which, after having had three actions dismissed, a prisoner forfeits his right to bring suit or appeal a judgment unless he can make a showing of "imminent danger of serious physical injury." Finally, this new legislation forgets that in forma pauperis litigation has historically been a vital source of law—enforcing, defining, and upholding the basic freedoms that define our nation.

Certainly, many believe prisoner suits are out-of-control, and that this provision is a necessary response. Without it, the argument goes, prisoners have no incentive to refrain from bringing silly claims. No doubt some prisoners, do bring claims wholly without merit, as do other litigants. Identifying a problem, however, does not in and of itself justify any solution, no matter how impractical, unjust, and counterproductive.

On one hand, the filing fee is unlikely to have a significant impact on prisoner litigation because the fee is collected in minimal installments. On the other hand, the administrative costs involved are likely to well exceed any benefit either the courts, the taxpayers, or the prisons may incur. For example, the costs of administering the ongoing financial relationship between the clerk's office and the prisoner litigant, in terms of postage, record-keeping, and accounting, will be substantial.

Congress has passed a law that is unlikely to achieve its stated goals, costs the supposed beneficiaries more than it benefits them, and is a departure from the nation's traditional view of justice. Nevertheless, the court is bound to follow the law, no matter how ineffective, mean-spirited, or unjust.

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. The prisoner has been assessed and paid an ini-

tial partial filing fee of $5.04. 28 U.S.C. § 1915(b)(4).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious", that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) & (2).

■■■ A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez,* 504 U.S. 25, 31, 112 S.Ct. 1728, 1732–33, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1832–33.

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 [1957]). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976), construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

### *Plaintiff's Claims*

The plaintiff's complaint contains twelve counts, and the only named defendant is OSCI Warden Gudmanson. A review of the complaint discloses that a majority of the plaintiff's claims do not allege that Warden Gudmanson was personally involved in any of the alleged violations. In fact, the plaintiff's claims are mainly against other prison officials at OSCI. The court is obliged to give plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See, Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972). Therefore, in giving the plaintiff's complaint a liberal construction, the court will infer that the plaintiff meant to include the prison officials referred to in the complaint as named defendants in this action. However, even with this allowance, many of the plaintiff's claims lack the necessary specificity and are merely conclusory.

■■■ Although a plaintiff need not always plead facts, and may plead conclusions, these conclusions must provide at least some minimum notice of the claim. *Jackson v. Marion County,* 66 F.3d 151, 153 (1995). A complaint must also have some minimum reasonable basis in law or fact, particularly when the plaintiff is seeking leave of court to proceed in forma pauperis. Persons should not be allowed to proceed in forma pauperis if their complaints are so lacking in specific facts that the court must invent factual scenarios which cannot be inferred from the pleadings. *See, Smith–Bey v. Hospital Administrator,* 841 F.2d 751, 758 (7th Cir. 1988).

■■■ Additionally, in order to assert a claim under 42 U.S.C. § 1983 against a party, a plaintiff must allege some personal participation or involvement by that party in the alleged constitutional violation. *See, Duck-*

*worth v. Franzen,* 780 F.2d 645 (7th Cir. 1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). To establish liability under § 1983, a plaintiff must therefore allege that a defendant was in some way personally responsible for the alleged deprivations, and that the deprivations occurred with the knowledge and consent of that defendant. *See, Smith v. Rowe,* 761 F.2d 360 (7th Cir. 1985). At the in forma pauperis stage, this personal involvement may either be stated specifically in the complaint or inferred from the surrounding circumstances. *See, Williams v. Faulkner,* 837 F.2d 304 (7th Cir.1988), *aff'd sub nom., Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A plaintiff must identify the particular persons responsible for each of the claims he makes, or explain his failure to do so.

■ In count 1, the plaintiff alleges that he has not been given any vocational training at OSCI. Prisoners have no liberty interest in receiving vocational training because a lack of vocational training in prison does not impose an atypical and significant hardship on the plaintiff in relation to the ordinary incidents of prison life. *See, Sandin v. Conner,* 515 U.S. 472, 485–86, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995).

■ The plaintiff also claims in this count that he has been denied vocational training as punishment for filing complaints at OSCI. An act taken in retaliation for the exercise of a constitutionally protected right may give rise to a claim under § 1983. *Rakovich v. Wade,* 850 F.2d 1180 (7th Cir.1988), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). However, the plaintiff does not assert facts with enough specificity to explain who is retaliating against him or which specific complaints resulted in the retaliation. Merely alleging the ultimate fact of retaliation is insufficient. *Benson v. Cady,* 761 F.2d 335, 342 (7th Cir.1985). Without more facts to understand the nature of the plaintiff's claim that he was retaliated against, the claim in count 1 is frivolous.

■ The plaintiff alleges in count 2 that his request to transfer to another prison was denied. This claim is lacking merit because prisoners do not have a liberty interest in transferring to a particular prison within the state system. *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451, *reh. denied,* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976).

■ In count 3, the plaintiff alleges that he has filed numerous inmate complaints that were dismissed without grounds by Warden Gudmanson. The plaintiff does not provide the court with any facts as to the nature of the complaints, the hearings, if any, or the inadequate basis for the dismissals. The court is left to invent facts in order to understand the nature of this claim; thus this claim is frivolous. *Smith–Bey,* 841 F.2d at 758.

■ Count 4 contains a number of allegations and count 7 concerns the same subject matter. First, the plaintiff claims that certain prison officials violated Wis. Admin. Code § 303.11(1)-(6). This provision concerns the conditions under which a prisoner can be placed in Temporary Lockup. However, the plaintiff does not provide enough details to describe exactly how this section was violated. Moreover, being placed in temporary lock up does not implicate a liberty interest. *Russ v. Young,* 895 F.2d 1149, 1154 (7th Cir.1989).

■ The plaintiff alleges in this count that he was not given sentence credit under Wis. Stat. § 973.155, when he was in temporary lockup. Section 973.155 provides for sentence credit when a defendant has spent time in custody awaiting determination of a criminal case. Under the facts given, the court cannot determine how the plaintiff thinks sec. 973.155 was violated. The court would have to invent fact scenarios because the plaintiff does not allege what sentence credit was due to him and how it was taken away. Without more facts, this claim is frivolous.

■ Even if this court assumed that the plaintiff is alleging that he was not granted sentence credit in general while he was in temporary lock up, this would involve an issue that implicates the length of his prison sentence. The plaintiff must prove that the loss of good time was reversed on direct

appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus before the plaintiff can bring a § 1983 claim. *Dixon v. Chrans,* 101 F.3d 1228, 1229 (7th Cir.1996); *Edwards v. Balisok,* —— U.S. ——––––, 117 S.Ct. 1584, 1588–89, 137 L.Ed.2d 906 (1997). The plaintiff has failed to allege that any of the above have occurred. Thus, this claim is premature as a § 1983 claim.

The plaintiff alleges that he was given a disciplinary "ticket" for disruptive conduct at the Waupaca County Jail, where he was temporarily incarcerated for a court hearing. The plaintiff denies that he was disruptive. The court will infer from the plaintiff's limited facts that there was a subsequent disciplinary hearing at the prison. The court will infer from the plaintiff's limited facts that the plaintiff was found guilty, sentenced to 60 days segregation, 5 days adjustment segregation and lost 10 days of "good time." The court infers that the plaintiff challenges the disciplinary hearing and the resulting discipline on the following grounds:

1) The guard who wrote the ticket did not see any prohibited conduct.

2) The deputies made contradictory statements regarding the incident.

3) The prison lacked jurisdiction to punish the plaintiff for conduct that allegedly took place at a county jail.

4) The plaintiff was denied requested witnesses at the hearing.

5) The prison officials took away good time that the plaintiff had not yet accumulated.

The plaintiff may have an arguable claim that he has a liberty interest in "good time." *See, Sandin,* 515 U.S. at 477–79, 115 S.Ct. at 2297. Thus, he may have an arguable claim that due process affords him a right to witnesses at the disciplinary hearing, among other protections. *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974). However, since the plaintiff is challenging a hearing which resulted in a loss of good time, a decision by this court would necessarily implicate the length of his prison sentence. The plaintiff must prove that the loss of good time was reversed on direct appeal, expunged by exec-

utive order, declared invalid by a state tribunal or called into question by a federal court's issuance of a writ of habeas corpus before the plaintiff can bring a § 1983 claim. *Dixon,* 101 F.3d at 1229; *Edwards,* —— U.S. at ——––––, 117 S.Ct. at 1588–89. The plaintiff has failed to allege that any of the above have occurred. Thus, this claim is not cognizable as a § 1983 claim.

The plaintiff alleges that his punishment of 60 days segregation, 5 days adjustment segregation and a 10 day extension of his mandatory release date (loss of good time) constitutes double jeopardy. Double jeopardy concerns protecting citizens from a second prosecution for the same offense after acquittal or conviction, and subjecting a defendant to multiple punishments for the same crime after conviction. *Garrity v. Fiedler,* 41 F.3d 1150, 1151 (7th Cir.1994). An extension of the mandatory release date does not increase the sentence beyond that originally imposed. Mandatory release is established at a portion of the sentence, and can be extended if the inmate violates prison regulations. *Garrity,* 41 F.3d at 1151; Wis. Admin. Code § 302.21. Therefore, an extension of the mandatory release date is a modification of the terms of confinement and not a second punishment of the original offense. *Id.* at 1152. Thus, claims 4 and 7 are legally frivolous.

The plaintiff alleges in count 5 that he was mistreated and brutalized while at the Waupaca County Jail for a hearing. The plaintiff does not describe who brutalized him or what exactly happened that led the plaintiff to believe he was brutalized. With only the plaintiff's conclusions, this claim cannot go forward.

In count 6, the plaintiff alleges that since August 1, 1995 to May of 1996 his legal and non-legal mail has been opened, read outside of his presence, and destroyed by "staff." Again, the plaintiff does not allege which staff members were involved in the mishandling. He does not allege that Warden Gudmanson, the only named defendant in this suit, was personally involved in the mis-handling of the mail. To establish a

claim under § 1983, the plaintiff must allege that a certain defendant was personally responsible for the alleged deprivation. *Smith,* 761 F.2d at 360. Therefore, this claim lacks sufficient facts and is frivolous.

■ The plaintiff's next claim (count 8) alleges that Charles Witkowski destroyed the plaintiff's property and failed to pay him compensation as recommended by a complaint examiner. The plaintiff does not state if Mr. Witkowski is an inmate or prison official. Thus, the court cannot determine if this proposed defendant was acting under state law when the incident took place. *Gomez,* 446 U.S. at 640, 100 S.Ct. at 1923–24. Without further information, the claim is frivolous.

Count 9 contains a series of allegations regarding the conditions in segregation. The plaintiff has alleged that while he was in segregation, other inmates were constantly noisy, he did not have a desk or a chair, his pen was inadequate, and his cell was illegally searched. He alleges these conditions violated the Eighth and Fourth Amendments.

■ The Eighth Amendment proscribes cruel and unusual punishment in cases of official conduct which is not part of the formal penalty for a crime if a plaintiff demonstrates: (1) a "sufficiently serious" deprivation and, (2) that officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). However, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson.* 501 U.S. at 298, 111 S.Ct. at 2324 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 [1981]). Prison conditions cannot rise to the level of cruel and unusual punishment under the Eighth Amendment unless the conditions produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson,* 501 U.S. at 304, 111 S.Ct. at 2327. If a prisoner is challenging conduct that does not purport to be punishment at all, like general prison conditions, the responsible prison officials must show more than an ordinary lack of due care for the prisoner's

interest or safety; they must act with obduracy and wantonness. *Id.* at 299, 111 S.Ct. at 2324–25 (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 [1986]).

■ The prison officials' failure to quiet noisy prisoners, provide a desk and chair in plaintiff's segregation cell, or provide an adequate pen (the "barrel" was removed but writing was still possible) did not violate the State's responsibility of providing him with a "minima of food ... and basic necessities." *See Woods v. Thieret,* 903 F.2d 1080, 1082 (7th Cir.1990). The plaintiff does not allege that the prison officials acted with a sufficiently culpable state of mind regarding these conditions. Therefore, the plaintiff's facts, even taken in the light most favorable to the plaintiff, do not rise to the level of cruel and unusual punishment.

■ The plaintiff's Fourth Amendment claim is likewise without merit. Prisoners do not have a Fourth Amendment right against unreasonable searches and seizures of their cells because they do not have any expectation of privacy in their cells. *Hudson v. Palmer,* 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). Therefore, even if prison officials "ransacked" his cell three times, they were within their rights to do so. "Unfettered access" to cells by prison officials is imperative and does not violate the Fourth Amendment. *Hudson,* 468 U.S. at 527, 104 S.Ct. at 3200.

■ The plaintiff next alleges in count 10 that he was not given a cell change when he requested it in violation of state regulations. Prisoners do not have a liberty interest in being placed in the cell of their choice. *See, Sandin,* 515 U.S. at 479–81, 115 S.Ct. at 2298. This claim is frivolous.

■ Moving to count 11, the plaintiff alleges that on December 14, 1995 he was "illegally" put into segregation. Placing a prisoner in segregated confinement does not implicate a due process liberty interest. *Sandin,* 515 U.S. at 487–88, 115 S.Ct. at 2302. The plaintiff fails to state any facts supporting why he thought this action was a violation of federal or constitutional law.

This claim fails to state a basis for relief and thus is dismissed as frivolous.

Finally, in count 12 the plaintiff alleges that he was moved from a regular unit to the "r-unit" in violation of his federal rights. Prisoners do not have a liberty interest in remaining in a particular cell block or wing of the prison. *Williams v. Faulkner*, 837 F.2d 304, 309 (7ᵗʰ Cir.1988). This claim is frivolous.

The plaintiff alleges that he was placed in the "r-unit" against his will and that this constituted double jeopardy. Placing an inmate in a different cell block during his incarceration is a modification of the terms of confinement and not double jeopardy. *See, Garrity,* 41 F.3d at 1152. The plaintiff has various complaints about the "r-unit," stating that inmates are subjected to "brainwashing" and "cattle tags." The complaint lacks specific facts regarding these conclusory allegations. Without more, the complaint fails to provide at least some minimum notice of the claim. *Jackson,* 66 F.3d at 153.

The plaintiff has also requested the assistance of counsel in this matter. Indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court. *Jackson v. County of Mc-Lean,* 953 F.2d 1070, 1071 (7ᵗʰ Cir.1992). Moreover, in this case, the court lacks sufficient basis to conclude that this action has even arguable merit. Plaintiff's request for appointment of counsel is therefore DENIED.

The plaintiff has filed a motion for default judgment in this case which will be DENIED as no proposed defendant has been served with this action.

### ORDER

**IT IS THEREFORE ORDERED** that the plaintiff's request to proceed in forma pauperis be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) as lacking any arguable basis in law.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has brought an action that was dismissed as frivolous under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $144.96 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that the plaintiff's motion for the appointment of counsel is DENIED.

**IT IS FURTHER ORDERED** that the plaintiff's motion for default judgment is DENIED.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that a copies of this order be sent to the warden of the institution where the inmate is confined and to Charles D. Hoornstra, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707–7857.

**I FURTHER CERTIFY** that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).