**Revised October 13, 1998**

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 96-30313
_____

CHARLES W CLARKE,

>           Plaintiff - Appellee - Cross-
>           Appellant,

versus

RICHARD L STALDER, ET AL,

>           Defendants

RICHARD L STALDER

>           Defendant - Appellant - Cross-
>           Appellee

ROBERT TANNER

>           Defendant - Appellee

CAPTAIN CHARLES MOULARD

>           Defendant - Appellee.

---

Appeals from the United States District Court
For the Eastern District of Louisiana

---

September 1, 1998

Before POLITZ, Chief Judge, REYNALDO G. GARZA, KING, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

We granted rehearing en banc to consider whether the Supreme

Court's decisions in _Heck v. Humphrey,_ 512 U.S. 477, 114 S. Ct.

2364, 129 L. Ed. 2d 383 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997), bar Charles W. Clarke, a Louisiana state prisoner, from bringing a facial challenge to a portion of Rule 3 of the Louisiana Department of Public Safety and Corrections' Disciplinary Rules and Procedures for Adult Prisoners ("Rule 3") in a 42 U.S.C. § 1983 action when Clarke has not yet had his "conviction" reversed, expunged, or otherwise declared invalid. If *Heck* and *Edwards* do not bar Clarke's claim, we also granted rehearing en banc to consider the question of whether the portion of Rule 3 in question facially violates prisoners' First Amendment rights.

The magistrate judge who heard this case held that Rule 3 had been unconstitutionally applied to Clarke and that the portion of the rule in question was facially unconstitutional. Based on these holdings, the magistrate judge restored Clarke's lost good-time credits but declined to award him damages. On appeal, a panel of this court reversed the magistrate judge and held that the Supreme Court's decisions in *Heck* and *Edwards* bar Clarke from bringing claims for damages and reinstatement of lost good-time credits in a § 1983 action until his "conviction" has been reversed, expunged, or otherwise declared invalid. *Clarke v. Stalder*, 121 F.3d 222 (5th Cir.), *reh'g en banc granted and opinion vacated by* 133 F.3d 940 (5th Cir. 1997). In Part III of its opinion, however, the panel affirmed the magistrate judge and held that Clarke's facial challenge to the constitutionality of Rule 3 was not barred by *Heck* or *Edwards*, that Clarke had standing to bring a facial challenge to

the rule, and that the portion of the rule in question was facially violative of the First Amendment.

Finding that *Heck* and *Edwards* bar Clarke's facial challenge at this time, we vacate the magistrate judge's holding that Rule 3 is facially unconstitutional and remand with instructions to dismiss. All parts of the panel opinion except for Part III and related portions of Part V are hereby reinstated.

I

The facts underlying Clarke's confrontation with Moulard and the ensuing suit are fully discussed in the panel opinion and dissent, *Clarke v. Stalder*, *supra*. As recounted there, Clarke brought the instant action against various prison officials based on events arising out of a confrontation with Captain Charles Moulard, a prison guard. Clarke interfered with another prisoner to whom Moulard had assigned various chores. When Moulard attempted to issue a disciplinary report to Clarke, Clarke threatened to file a lawsuit and an administrative complaint against Moulard. Moulard accordingly charged Clarke with violating Rule 3. This rule, in part, prohibits a prisoner from "threatening [a prison employee] with legal redress during a confrontation situation"[1] ("no threats of legal redress" portion). At a hearing

---

[1] At the time of the events in question, Rule 3 provided as follows:

Defiance (Schedule B): No prisoner shall commit or threaten physically or verbally to commit bodily harm upon an employee. No prisoner shall curse an employee or insult his family in the employee's presence. No prisoner shall threaten an employee in any manner, including threatening with legal redress during a

-3-

before a prison disciplinary board, Clarke denied Moulard's allegations, but to no avail. The disciplinary board found that Clarke had violated Rule 3 because Moulard's report was clear and precise, Clarke had offered no coherent defense, and Clarke had little credibility. The board also noted that Clarke "admit[ted] he threatened legal redress during a confrontation with staff." The board punished Clarke with the loss of ten days good-time credits and transferred him to a higher-security prison.

Clarke subsequently brought this suit, alleging that the "no threats of legal redress" portion of Rule 3 violated his rights protected by the First Amendment and seeking damages and the return of his good-time credits. He also sought prospective injunctive relief from the "no threats of legal redress" portion of the rule on grounds of facial unconstitutionality. A panel of this court held that *Heck* and *Edwards* "clearly barred" Clarke's contention that he was entitled to damages and reinstatement of his good-time credits because so doing would "necessarily imply" the invalidity of his "conviction." *See Clarke*, 121 F.3d at 226. With regard to Clarke's facial challenge to Rule 3, the panel held that "it is unclear upon which portion of [Rule 3] Clarke's conviction is based. That being so, a ruling in Clarke's favor on his First

confrontation situation (this does not mean telling an employee of planned legal redress outside a confrontation situation and certainly does not mean the actual composition or filing of a writ, suit, etc.; threatening to write to the Secretary, the Warden or other institutional officials is not a violation). No prisoner shall obstruct or resist an employee who is performing his proper duties. No prisoner shall try to intimidate an employee to make the employee do as the prisoner wants him to do.

-4-

Amendment claim for prospective relief will not 'necessarily imply' the invalidity of his prison conviction."  *Id*. at 227.

## II

The root inconsistency in the panel opinion lies in its finding that the prison disciplinary board punished Clarke for violation of the "no threats of legal redress" portion of Rule 3 with regard to Clarke's claims for damages and restoration of his good-time credits but not with regard to his claim that this portion of Rule 3 is facially unconstitutional.  Both the report issued by the prison disciplinary board and the report issued by the Secretary of the Louisiana Department of Corrections on Clarke's internal appeal of the disciplinary board decision state that Clarke admitted to the prison disciplinary board that he "threatened legal redress during a confrontation with staff." Clarke's complaint, as amended, alleges that he was punished for violating the "no threats of legal redress" portion of Rule 3 in violation of the First Amendment.  Although the appellants argued below and to this court at its en banc rehearing of this case that Clarke had been punished for violating other portions of Rule 3 in addition to the "no threats of legal redress" portion of the rule, the magistrate's opinion indicates as follows:

> At issue in this case is that portion of Rule 3 which allows prison officials to discipline inmates for "threatening" legal redress during a "confrontation situation" . . . From the evidence that was presented at trial, the Court readily infers that plaintiff was stripped of good time credits and was transferred to a medium security prison in retaliation for voicing his intention to exercise his First Amendment rights.

-5-

Critically, the magistrate's opinion also states: "[h]ad [Clarke] threatened the defendant with physical harm or insulted the employee or his family, disciplinary action against [Clarke] would have been appropriate under the other, unchallenged portions of DOC Rule 3." Accordingly, we find that Clarke was punished for violation of the "no threats of legal redress" portion of Rule 3.

### III

We start with several familiar propositions. A prisoner cannot, in a § 1983 action, challenge the fact or duration of his confinement or recover good-time credits lost in a prison disciplinary proceeding. *See Preiser v. Rodriguez*, 411 U.S. 475, 487, 93 S. Ct. 1827, 1835, 36 L. Ed. 2d 439 (1973). A prisoner also cannot bring a § 1983 action seeking damages (rather than the recovery of good-time credits) based on a "conviction" until that "conviction" has been reversed on direct appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of habeas corpus, if a favorable judgment would "necessarily imply" the invalidity of the prisoner's "conviction" or the length of his confinement. *Heck*, 512 U.S. at 486-87, 114 S. Ct. at 2372. A "conviction," for purposes of *Heck*, includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits. *See Edwards*, 520 U.S. at --, 117 S. Ct. at 1587; *Stone-Bey v. Barnes*, 120 F.3d 718, 721 (7th Cir. 1997) ("The 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary

-6-

charge, and if success of the plaintiff's section 1983 claim necessarily would imply the invalidity of that finding, then *Heck* bars the claim until such time as its requirements are satisfied."). Claims for damages and declaratory relief challenging the procedures used in, but not the results of, prison disciplinary proceedings are similarly not cognizable in a § 1983 action until the relevant "conviction" has been reversed, expunged, or otherwise declared invalid if a favorable judgment would "necessarily imply" the invalidity of the prisoner's "conviction" in the disciplinary proceeding or the length of the prisoner's confinement. *Edwards*, 520 U.S. at --, 117 S. Ct. at 1588.

Like Clarke, the prisoner-plaintiff in *Edwards* brought a claim for prospective injunctive relief, in addition to bringing claims for damages and declaratory relief. The Supreme Court remanded the claim for prospective injunctive relief without deciding it because it had been addressed by neither the Ninth Circuit nor the district court. *Id*. at --, 117 S. Ct. at 1589. In passing, however, the Supreme Court noted: "[o]rdinarily, a prayer for prospective relief will not 'necessarily imply' the invalidity of a previous loss of good time credits and so may properly be brought under § 1983." *Id*. The type of prospective injunctive relief sought in *Edwards*))date-stamping witness statements))is, however, very different from that sought by Clarke in the case at hand. *See id*. Indeed, unlike the sort of prospective relief envisioned by the Supreme Court in *Edwards* that may have only an "indirect impact" on the validity of a prisoner's conviction, *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th

-7-

Cir. 1995); *see also Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997), the type of prospective injunctive relief that Clarke requests in this case))a facial declaration of the unconstitutionality of the "no threats of legal redress" portion of Rule 3))is so intertwined with his request for damages and reinstatement of his lost good-time credits that a favorable ruling on the former would "necessarily imply" the invalidity of his loss of good-time credits. *See Edwards*, 520 U.S. at --, 117 S. Ct. at 1587 (stating that "the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment").

An understanding of why Clarke's facial challenge to Rule 3 and claims for damages and restoration of lost good-time credits are so intertwined that a favorable ruling on his facial challenge would "necessarily imply" the invalidity of his "conviction" comes from our opinion in *Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1119 (5th Cir. 1987). In considering a challenge to the procedures employed in determining prisoner eligibility for parole, we explained that "[e]ven in some broad-based attacks, resolution of the factual allegations and legal issues necessary to decide the § 1983 claim may, in effect, automatically entitle one or more claimants to immediate or earlier release . . . [s]uch claims must [] be pursued initially through habeas corpus." *Id.* To determine whether resolution of a claim would automatically entitle a claimant to immediate release, *Serio* explained that the "court must consider the distinction between

claims that would merely enhance eligibility for earlier release and those that would create entitlement to such relief." *Id.*

A favorable ruling on the injunctive relief that Clarke requests))namely, that the "no threats of legal redress" portion of Rule 3 violates prisoners' rights protected by the First Amendment))would be binding on state courts in a subsequent action. *See Heck*, 512 U.S. at 488 n.9, 114 S. Ct. at 2373 n.9 ("State courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law."); *Pilié & Pilié v. Metz*, 547 So. 2d 1305, 1308-10 (La. 1989) (explaining the preclusive effect that Louisiana courts give to federal court judgments); *see also Clayton-EL v. Fisher*, 96 F.3d 236, 243 (7th Cir. 1996) ("If Clayton-EL proved in a § 1983 action that the result of the disciplinary process was invalid, this proof would have preclusive effect in a state court habeas corpus action that challenged the recision of his good time credits."); 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4468 (1981 & Supp. 1998). Because Clarke's "conviction" stemmed from violation of the "no threats of legal redress" portion of Rule 3))a determination that again would be binding on a state court in a subsequent action))the state court could only conclude that Clarke had been convicted of violating an unconstitutional rule. Conviction based on an unconstitutional rule is the sort of "obvious defect" that, when established, results in nullification of the conviction. *See, e.g., Edwards,* 520 U.S. --, 117 S. Ct. at 1588; *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996). The state court thus would have

-9-

no choice but to strike down Clarke's punishment and reinstate his lost good-time credits; resistance by the state would be "'an exercise in futility.'" *Serio*, 821 F.2d at 1119 (quoting *Fulford v. Klein*, 529 F.2d 377, 381 (5th Cir. 1976), *adhered to en banc*, 550 F.2d 342 (1977)).

Therefore, Clarke's request that the "no threats of legal redress" portion of Rule 3 be declared facially unconstitutional is so intertwined with his requests for restoration of lost good-time credits and damages that resolution of the issues necessary to determine whether the "no threats of legal redress" portion of Rule 3 violates the First Amendment would, in effect, if favorable, automatically entitle Clarke to reinstatement of his lost good-time credits. *See id.* As such, our determination would "necessarily imply" the invalidity of his punishment.[2] *See Clayton-EL*, 96 F.3d at 243; *Sheldon*, 83 F.3d at 234 ("Sheldon's First Amendment claims are so entangled with the propriety of the disciplinary result, which triggered the loss of good-time credits, that ruling in Sheldon's favor on First Amendment grounds would necessarily imply the invalidity of the disciplinary result and the lengthened

---

[2]    We also note that the converse is true))if we decided that *Heck* did not bar Clarke's action, reached the merits of Clarke's claim and held that the "no legal redress" portion of Rule 3 did not violate the First Amendment, such a ruling again would have preclusive effect in state court, preventing Clarke from getting his good-time credits back, which he has consistently sought. *See Dixon v. Chrans*, 101 F.3d 1228, 1231 (7th Cir. 1996) ("If a federal court were to decide))as the district judge did in this case))that his due process rights were *not* violated, that decision could also have preclusive effect in state court, possibly preventing Dixon from obtaining the one type of relief which is probably most important to him, or at least to most similarly situated prisoners))restoration of good time credits.").

sentence."). Accordingly, because Clarke has not had his "conviction" reversed, expunged or otherwise declared invalid,[3] his claim that the "no threats of legal redress" portion of Rule 3 is facially unconstitutional is not yet cognizable in a § 1983 action. *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996). We express no opinion as to the constitutionality of the "no threats of legal redress" portion of Rule 3.

## IV

The magistrate judge's judgment in favor of Clarke on his claim that Rule 3 is facially unconstitutional is VACATED. We REMAND with instructions to dismiss this claim without prejudice to Clarke refiling this claim at such time as he can demonstrate that he has achieved the requisite relief. All portions of the panel opinion except for Part III and related portions of Part V are REINSTATED.

---

[3] In response to questioning at oral argument, both sides suggested that Louisiana courts recognize state collateral actions challenging prison regulations and seeking to recover lost good-time credits. *See, e.g., Louisiana ex rel. Gallagher v. Louisiana*, 462 So. 2d 1221, 1230-33 (La. 1985); *Louisiana ex rel. Bickman v. Dees*, 367 So. 2d 283, 288-89 (La. 1978); *Bancroft v. Louisiana Dep't of Corrections*, 635 So. 2d 738, 740 (La. Ct. App. 1994); *Howard v. Louisiana Bd. of Probation and Parole*, 589 So. 2d 534, 535 (La. Ct. App. 1991); *Vincent v. Louisiana Through Dep't of Corrections*, 468 So. 2d 1329, 1332 (La. Ct. App. 1985).

REYNALDO G. GARZA, Circuit Judge, dissenting:[4]

My colleagues in the majority utilize *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584, 137 Ed. 2d 906 (1997), to dismiss the only issue which is presented before this Court; whether the "no threats of legal redress" portion of Rule 3 constitutes an impermissible violation of the First Amendment.

The panel hearing Clarke's original appeal correctly reversed the magistrate judge and held that *Heck* and *Edwards* barred Clarke from bringing claims for damages and reinstatement of lost good-time credits in a § 1983 action until his conviction has been reversed, expunged, or otherwise declared invalid. *Clarke v. Stalder*, 121 F.3d 222 (5th Cir.) *reh'g en banc granted and opinion vacated by* 133 F.3d 940 (5th Cir. 1997). Moreover, the panel was correct in affirming the magistrate judge by holding that Clarke's facial challenge to the constitutionality of Rule 3 was not barred by *Heck or Edwards*.

The majority, however, now find that *Heck* and *Edwards* bar Clarke's facial challenge and vacate the magistrate judge's holding that Rule 3 is facially unconstitutional and remand with instructions to dismiss. This holding is incorrect because the panel in its opinion did not violate *Heck* or *Edwards*.

---

[4] Judge Jerry E. Smith joins the dissent only in regards to part I of this opinion.

The majority contends that *Heck* and *Edwards* prohibit Clarke's request for prospective injunctive relief. They state that Clarke's request for prospective injunctive relief, a facial declaration of the unconstitutionality of the "no threats of legal redress" portion of Rule 3, is so intertwined with his requests for damages and reinstatement of his lost good-time credits that granting such relief would "necessarily imply" the invalidity of his loss of good-time credits. This conclusion is flawed.

It is evident that awarding such prospective relief to Clarke would not "necessarily imply" the invalidity of his conviction. At best it could "possibly imply" the invalidity of his loss of good-time credits. This is because the "no threats of legal redress" portion of Rule 3 may not be the only basis for his conviction. The initial disciplinary write-up, the guard's testimony, and several pages worth of the Secretary's own briefs indicate several grounds for conviction.

The majority however have taken these facts and "swept them under the rug" so they can dismiss the prospective relief sought by Clarke and not address the constitutional issue that stands before this Court. They state, "[a]ccordingly, we find that Clarke was punished for violation of the "no threats of legal redress" portion of Rule 3." My knowlegable colleagues have either made a terrible mistake or now look at this case with blind eyes. I will now go into great detail to paint the true picture that they should have seen.

Clarke's admission that he threatened to sue provided a convenient basis for the Disciplinary Board to quickly resolve the proceedings against Clarke without addressing his other conduct in violation of the rule. However, Captain Moulard (the guard involved) testified at trial that Clarke "became belligerent, shook his finger in my face and started cussing, cursing me . . . ." Captain Moulard's disciplinary report contained the following description of the incident:

> On the above date and time the above inmate was interfering with inmates assigned to extra duty. I Capt. Moulard called inmate Clark to C/C to talk to him. I told him I was going to write him up for interfering with the inmates. Inmate Clarke became belligerent [sic] and told me he was going to file a lawsuit and an ARP on me and that he was going to see who was going to win.

The Disciplinary Board found Clarke guilty of violating Rule 3. A space on the disciplinary report calling for the "[r]easons for [g]uilty" contained a handwritten notation that "[i]nmate admits he threatened legal redress during a confrontation with staff." This section of the report also contains check marks next to spaces indicating that "[r]eport is clear and precise," "[l]ack of a credible defense/little or no defense," and "[t]he inmate's demeanor led the board to believe that inmate's testimony was untrue." Clarke appealed to the Secretary, who affirmed because "[t]his inmate admitted that he threatened legal action during this incident . . . [h]is actions constituted an obvious violation of Rule #3."

Unlike the majority contends, this evidence does not establish that the sole reason for Clarke's conviction was his threat to sue.

-14-

In contrast, the Disciplinary Board's reliance on Captain Moulard's "clear and precise" report specifically indicates that the Board also considered Clarke's conduct accompanying his threat to sue, including his interference with the work of other inmates, his belligerence, and his challenge to "see who was going to win."

The Secretary has "shot himself in the foot" by arguing that based on the adequacy of other grounds in support of Clarke's conviction, the Court should not reach the constitutional issue. The Secretary simply cannot establish from the record which grounds formed the basis for Clarke's conviction. Specifically, the Secretary forcefully argues that there was no evidence at trial indicating that the conviction was based solely on Clarke's legal threats. As noted above, the Disciplinary Report indicates that the Board considered the totality of Clarke's conduct, as established by the guard's "clear and precise" report.

Although it is the trial court's task to determine what the specific basis for Clarke's conviction was, suffice it to say that there are at least questions of fact in that regard. In fact, the Secretary would be hard pressed to argue that the conviction was based solely on Clarke's threat to sue, considering Secretary's arguments that the record is replete with evidence of other grounds which support Clarke's conviction and penalty. To provide more detail I will illustrate some instances in which the Secretary argues that Clarke's threat to sue was not the sole basis for his conviction:

> Because, the plaintiff-inmate's August 16, 1992 *write-up amply supports its issuance and subsequent conviction by*

*the Disciplinary Board on grounds which have nothing to do with the plaintiff-inmate's alleged exercise of his First Amendment free speech rights*, the lower court erred in even reaching the constitutional issue in this case.

(Appellant's Original Br. at 6 (italics added)).

This Court need not even reach the First Amendment issues in connection with Charles Clarke's August 16, 1992 write-up because he cannot show that the <u>sole</u> reason for his punishment . . . was for exercising an alleged First Amendment right.  In other words, *there is sufficient evidence in the record supporting the disciplinary action . . . on grounds which do not implicate the First Amendment . . . .*

(*Id.* at 6-7 (underscoring in original, italics added)).

As provided in the write-up itself and corroborated by the trial testimony of Captain Moulard, Charles Clarke took three (3) actions on August 16, 1992, ***all*** *subjecting him to a Rule 3 write-up for Defiance*:
(1) he became belligerent;
(2) he threatened to file a lawsuit and an ARP against Captain Moulard; and
(3) he told Captain Moulard "he was going to see who was going to win."

(*Id.* at 9 (bold in original, italics added)).

There was *no evidence adduced at trial whatsoever suggesting that Captain Moulard or the Disciplinary Board based their decisions solely and exclusively on Charles Clarke's threat of legal redress.*

(*Id.* (italics added)).

-16-

The substantive description in the August 16, 1992 write-up amply supports its issuance and Disciplinary Rule 3 conviction with *facts that have nothing to do with a verbal threat of litigation of administrative remedy*. The Magistrate's Order and Reasons, however, failed to even address or mention this argument.

(*Id.* at 11 (italics added)).

[T]he disciplinary proceeding at issue is independently supported by defiant behavior not constitutionally protected.

(Appellant's Reply Br. at 2.)

Clarke was originally cited for belligerence, threatening legal action in a confrontation situation, and challenging a guard to see who was going to win. *Only the second of these actions involves a First Amendment claim;* the constitutional issue need not be addressed because the punishment in independently supported by the other two grounds.

(*Id.* at 4 (italics added)).

*Combativeness and a challenge to prison authority are each sufficient for defiance, and clearly not constitutionally protected behavior.* The substance of Clarke's other threat does not cloak these actions with constitutional protection, any more than flag burning justifies burning down a building in the process. *Regardless of what he said, Clarke became belligerent and "called out" the guard; both action constitute defiance.*

(*Id.* at 5 (italics added)).

Clarke's disciplinary conviction can and should be upheld based upon his belligerence and his challenge to the guard to see who would win. . . . [B]ecoming belligerent and threatening to see who would win both constitute

-17-

threats and intimidation efforts, and *each separately supports conviction for defiance under the rule.*

(Defendant-Appellant's Supp. Br. For Reh'g En Banc at 8 (italics added)).

> Clarke then became belligerent and threatened Captain Moulard. He cursed and shook his finger at the guard, and made this three-fold threat. His belligerence suggested the threat of bodily harm and was an effort to intimidate Captain Moulard; the threat to file a lawsuit and an ARP similarly represented a further effort to intimidate the guard not to perform his duties. Finally, the challenge to "see who is going to win" was a direct threat to the guard's authority, intimidation and an outright challenge to prison discipline. . . . *Regardless of this threat of legal redress to intimidate the guard, Clarke is guilty of belligerence and a direct challenge to prison authority, both acts constituting defiance.*

(*Id.* at 10 (italics added)).

It is evident, at the very least, factual issues remain as to the sufficiency of the other grounds for Clarke's conviction; therefore, sending the case back was the proper course of action. The Secretary pointed out that the magistrate did not address the other grounds for Clarke's conviction. As Clarke's conviction could be based on other grounds, our ruling does not necessarily imply the invalidity of his conviction.

Finally, contrary to the majority's assertion, the magistrate's statement that "[h]ad [Clarke] threatened the defendant with physical harm or insulted the employee or his family, disciplinary action against [Clarke] *would have been*

-18-

appropriate under the other, unchallenged portions of DOC Rule 3," does not imply that Clarke's conviction was not based on some other aspect of the rule. Significantly, the quoted statement does not discuss the final two sentences of the rule, which also define Defiance:

> No prisoner shall obstruct or resist an employee who is performing his proper duties. No prisoner shall try to intimidate an employee to make the employee do as the prisoner wants him to do.

The Secretary's assertion that Clarke's conviction was based on his belligerence and his direct challenge to prison authority easily fit within these prohibitions. This further supports my conclusion that, because of the other potential grounds for Clarke's conviction, our ruling does not necessarily imply the invalidity of that conviction.

The majority must remember that Justice Scalia in *Heck* established that if a federal judicial action would "necessarily imply" the invalidity of a prison conviction the court may not act. *Heck*, 512 U.S. at 486-87, 114 S. Ct. at 2372. Justice Scalia's words are "necessarily imply" not "possibly imply" or "probably imply." The majority by ruling that Clarke's request for prospective relief would "necessarily imply" the invalidity of his loss of good-time credits has essentially put words in Justice Scalia's mouth. Justice Scalia never envisioned *Heck* or *Edwards* to be an escape hatch to avoid ruling on constitutional issues that

-19-

come before this Circuit.

Moreover, the majority fails to fully discuss *Heck*. Justice Scalia stated in *Heck* that "[I]f the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgement against the plaintiff, the action should be allowed to proceed [5]. . . ." *Heck*, 512 U.S. at 487, 114 S. Ct. at 2372-73. This case presents just that situation. This Court in addressing the constitutionality of "no threats of legal redress" portion of Rule 3 will not invalidate Clarke's conviction. It is evident from the numerous examples I have provided that the "no threats of legal redress" portion of Rule 3 was not the sole basis for Clarke's conviction. In addition, because there are other violations of Rule 3 that the court may use to support Clarke's conviction, there is no substantial risk that granting the prospective relief will invalidate his conviction. Therefore, we must address this constitutional issue.

It is our duty and obligation to rule on this First Amendment issue. It is not necessary for Clarke to have a lower court conduct *Habeas Corpus* proceedings. It will be a waste of judicial time and resources. Regardless of how a lower court holds our

---

[5]Justice Scalia provides an example of a suit for damages for an allegedly unreasonable search. He states that the search may be used even if the challenged search produced evidence that was introduced in a state trial resulting in the § 1983 plaintiff's outstanding conviction. That is because the plaintiff's action will not invalidate any outstanding criminal judgment because there are doctrines such as independent source and inevitable discovery, and harmless error that may be utilized. *Heck*, 512 U.S. at 487 n.7.

circuit will eventually have to decide the constitutionality of the "no threats of legal redress" portion of Rule 3. The losing party in such an action will surely appeal the lower court's holding.

I agree with the majority that Clarke should not have his conviction set aside. In fact, the original panel in which I sat denied such relief. However, no inmate should have an unconstitutional rule hanging over their head. To allow this to occur, when this Court has the opportunity to strike down the "no threats of legal redress" portion of the Rule 3, would be wrong.

If the majority does or does not believe that the "no threats of legal redress" portion of Rule 3 is unconstitutional then they should express their finding. By doing so, it would give Clarke the opportunity to seek assistance from the Supreme Court. I am sure if the majority finds, as I have, that this portion of the Rule 3 is unconstitutional then the State of Louisiana will appeal this case to the Supreme Court. Consequently, Clarke will rightfully have a final determination of the constitutionality of Rule 3.

II.

As stated in my opinion in *Clarke v. Stalder*, 121 F.3d 222 (5th Cir.) *reh'g en banc granted and opinion vacated by* 133 F.3d 940 (5th Cir. 1997), the "no threats of legal redress" portion of Rule 3 is unconstitutional. This determination was made by applying the test set forth in *Turner*, in light of the magistrate

judge's factual findings. *Clarke*, 121 F.3d at 227-31. *Turner* states that a prison rule, which restricts a prisoner's freedom of speech, should be upheld so long as it is "reasonably related" to legitimate penological goals. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62 (1987). We concluded that the goal was legitimate. We were, however, convinced that the prison rule was not "reasonably related."

I still firmly believe that our previous holding that the "no threats of legal redress" portion of Rule 3 was unconstitutional was the correct determination. Since the majority has chosen not to address this constitutional issue, I am forced to adamantly dissent.

DENNIS, Circuit Judge, dissenting.

I respectfully dissent for reasons closely associated with and derivative of those stated in Part I of Judge Reynaldo Garza's dissenting opinion. I write further to add or make explicit several of those reasons: (1) The Department of Corrections defendants have conceded that, if the "face-to-face threat of legal redress" prohibition is unconstitutional, their reliance in part on that provision in imposing disciplinary punishment on Clarke was harmless error; (2) Therefore, the plaintiff's action for prospective declaratory and injunctive relief based on the alleged unconstitutionality of that prohibition, even if successful, will not demonstrate the invalidity of the previous determination of his guilt of prison rule infractions or the loss of good time imposed as punishment therefor; (3) Our determination that the Department of Corrections defendants' reliance, in part, on the challenged prohibition was harmless error, based both on the Department's concession and the overwhelming evidence of record, will be res judicata in Clarke's future attempt to regain his lost good time in habeas proceedings, even if the prohibition is ultimately adjudged to be unconstitutional in the present action for prospective declaratory and injunctive relief.

Clarke prays for prospective relief declaring that a Department of Corrections disciplinary rule's prohibition of a prisoner from "threatening [any Department employee] with legal redress during a confrontation situation" violates the free speech

-23-

clause of the First Amendment and enjoining the Department from enforcing that prohibition. This claim is not cognizable under 18 U.S.C. § 1983 if such a judgment for Clarke would "necessarily imply" the invalidity of his previous loss of 10 days of good-time credit as punishment for prison rule infractions. Edwards v. Balisok, 520 U.S. 641 (1997). But if the success of Clarke's action will not necessarily imply the invalidity of the punishment imposed, the action should be allowed to proceed, in the absence of some other bar to the suit. Heck v. Humphrey, 512 U.S. 477, 487 (1994). "For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." Id. n.7. "Because of doctrines like [] especially harmless error, see Arizona v. Fulminante, 499 U.S. 279, 307-308[](1991), such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." Id. In the present case, as Judge Reynaldo G. Garza has cogently demonstrated in his dissent, the Secretary of the Department of Corrections and the other defendants have conceded that, even if the prison regulatory prohibition against a prisoner's face-to-face threat to sue a guard is unconstitutional, the Department's partial reliance upon it was harmless error because there was overwhelming and conclusive proof of Clarke's guilt of the prison rule infraction by other acts by Clarke in the same episode for which Clarke does not claim protection under the First Amendment. For instance, in the same

-24-

confrontation, Clarke not only threatened to sue; he also demonstrated belligerence or aggressiveness toward the guard; he defiantly "called out" the guard; he threatened the guard while cursing and shaking his finger at the guard; his belligerence suggested the threat of bodily harm to the guard. The majority's fears that a judgment in the present § 1983 action declaring that the prohibition is violative of the free speech clause of the First Amendment would be res judicata in Clarke's future habeas proceedings to alleviate his punishment are unfounded. Our determination that the Department's reliance, in part, on the challenged prohibition of allegedly protected speech was harmless and ineffectual to his prison disciplinary proceeding and punishment, based on the Department's concession of this fact and the overwhelming support for that conclusion in the record, will have res judicata effect in Clarke's future habeas proceeding. If this were not the case, the Supreme Court in Heck would not have stated that because of doctrines like independent source, inevitable discovery, and "especially harmless error" certain § 1983 actions, "even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." Id. at 487, n.7.

Consequently, I agree with and concur in part I of Judge Reynaldo G. Garza's dissenting opinion. I will reserve judgment, however, on the merits of whether the prohibition against face-to-face threats to sue is constitutional. I acknowledge the persuasive force of my dissenting colleague's argument on the subject in his panel opinion. The majority did not address the

issue, however, and I would prefer to decide upon it after having the benefit of a more robust discussion and debate among the members of the court.